# 24-127

In the

# United States Court of Appeals

### For the Second Circuit



THERMAL SURGICAL, LLC,

*Plaintiff-Appellee,*

– v. –

JEFF BROWN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE VERMONT DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT

LAW OFFICE OF FRANK P. URSO
*Attorneys for Defendant-Appellant*
18 South Main Street
Rutland, Vermont 05701
(802) 775-2361
reisurso@yahoo.com

APPELLATE INNOVATIONS
(914) 948-2240

21121

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................2

STATEMENT OF THE CASE .......................................................................2

SUMMARY OF THE ARGUMENT ...............................................................6

ARGUMENT.................................................................................................7

  CONCLUSION ...................................................................... 13

  CERTIFICATE OF COMPLIANCE ......................................................... 14

# **TABLE OF AUTHORITIES**

***Cases***                                         **Pages**

*Chemetron Corp. v Bus. Funds, Inc.,*
11 682 F. 2d 1149, 1191 (5th Cir. 1982)...............................................................12

*Corbett v MacDonald Moving Servs.,*
10 124 F. 3d 82,88 (2d Cir. 1997).........................................................................10

*Matter of Mobile Steel Co.,*
11 4563 F. 2d 692,700 (5th Cir. 1977).................................................................11

*Parklane Hosiery Co. v Shore,*
439 U.S. 322, 330-32 (1979).............................................................................11, 12

*Sharp Kabushiki Kaisha v ThinkSharp, Inc.,*
448 F. 3d 1368, 1371 (Fed, Cir. 2006)..................................................................11

*Shrader v CSX Transportation Inc.,*
70 F. 3d 255 (2d Cir. 1995).....................................................................................8

*St Paul Mercury Inc. Co. v Williamson,*
224 F. 3d 425,439 (5th Cir. 2000) ........................................................................11

*Virgin Atl, Airways, Ltd. v Nat'l Mediation Bd.,*
956 F. 2d 1245, 1255 (2d Cir.1992).......................................................................8

*Ziino v Baker,*
613 F. 3d 1326, 1328 (11th Cir. 2010).................................................................11

***STATUTES***                                       ***PAGES***

28 U.S.C. Sec 1332 ...................................................................................................1

11 U.S.C. Sec 727(10).............................................................................................4

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Vermont had jurisdiction over this matter pursuant to 28 U.S.C. § 1332 due to the complete diversity of citizenship and claims in excess of $75,000.00. The Plaintiff Thermal Surgical LLC (hereafter, "Thermal Surgical") is a Vermont limited liability company with a business address of 15 Baycrest Drive, Burlington, Vermont. The Defendant Jeff Brown is a resident of the State of New Hampshire. In the District Court case entitled *Thermal Surgical LLC v. Jeff Brown* – Case No. 2:15-cv-220 (hereafter, the "Thermal Surgical Case") Thermal Surgical in its complaint alleged that Mr. Brown had caused it more than $2,000,000 in damages. App. at A-21. Mr. Brown has the right to appeal to the US Court of Appeals for the Second Circuit because the District Court issued on November 30, 2023 a final judgment against him (App. at A-146) and he has issues with how the District Court applied the law against him. Mr. Brown filed his Notice of Appeal with the District Court on December 28, 2023. App. at A-148.

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

## ISSUE 1

Did the United States District Court for the District of Vermont (hereafter, the "District Court") err when it granted Thermal Surgical's and NuVasive Inc's. motion for partial reconsideration of the District Court's previous denial of their motions for summary judgement?

## ISSUE 2

Did the District Court err when, on second thought, it granted Thermal Surgical's motion for summary judgment on the grounds that the order of the U.S. Bankruptcy Court for the District of New Hampshire (hereafter, the "Bankruptcy Court") allowing its proof of claim constituted a final judgment to which res judicata applied?

# STATEMENT OF THE CASE

This appeal stems from two consolidated cases, namely the Thermal Surgical Case and <u>NuVasive, Inc. v Jeff Brown</u> - Case No. 2:19-cv-75 (hereafter, the "NuVasive Case"). The Appellant/Defendant Jeff Brown was hired by NuVasive Inc. (hereafter, "NuVasive") as a sales representative in 2007. NuVasive is a billion-dollar pharmaceutical company. However, in 2013 Thermal Surgical became an exclusive distributor of NuVasive products used in spine

2

surgery. Thereafter Jeff Brown became an employee of Thermal Surgical by executing an employment agreement with that company, which contained a non-compete agreement in the event that Mr. Brown left his employment.

Mr. Brown subsequently produced significant revenues for both Plaintiffs, especially at Lake Regions General Hospital (hereafter "LRGH") in Laconia, New Hampshire, in large part because his uncle, Dr. Anthony Salerni, was a successful spine surgeon operating there. However, after being denied lucrative consulting arrangements with NuVasive and Therma Surgical, Dr. Salerni and another spine surgeon at LRGH, Dr. Lieberman, eventually stopped using NuVasive products causing a significant drop in its sales of spine surgery products. The drop in sales was erroneously blamed on Mr. Brown whom Thermal Surgical fired on February 25, 2014. Mr. Brown then went to work for a company named A2 Medical LLC (hereafter, "A2 Medical").

On October 13, 2015 Thermal Surgical filed its complaint in the District Court against Jeff Brown alleging primarily he had breached his non-competition agreement by selling spine surgery products of A2 Medical, thus causing Thermal Surgical damages in lost revenues. App. at A-21. The complaint alleged more than $2,000,000 in damages. On September 21, 2016 Mr. Brown filed for Chapter 7 bankruptcy in the Bankruptcy Court. (Bankruptcy Petition #16-11321-BAH).

3

This filing automatically stayed the Thermal Surgical Case.

Listed below is a chronology of bankruptcy filings relevant to this appeal:

- On October 19, 2017 Thermal Surgical filed an adversary proceeding entitled "Complaint Filed by Creditor, Thermal Surgical LLC Pursuant to 11 U.S.C. Sec 727 Objecting to Debtor Receiving a Discharge" (hereafter, the "Adversary Complaint" or "Adversary Proceeding").[1] It alleged that Jeff Brown concealed assets from the Bankruptcy Court.

- On June 4, 2018 Thermal Surgical filed a proof of claim in the amount of $315,000 [2], notwithstanding that in the Thermal Surgical Case it had alleged more than $2,000,000 in damages;

- On November 28, 2018 in response to the Adversary Complaint Mr. Brown filed an Assented Motion to Approve Waiver of Discharge of his debts to Thermal Surgical and NuVasive (hereafter, sometimes referred to as the "NuVasive parties") pursuant to 11 U.S.C. 727(10). The NuVasive parties assented thereto. Said waiver was granted by the Bankruptcy Court on November 30, 2018; and

---

[1] On the advice of the case manager this document will be entered into an Appendix to be filed subsequently should the court grant Jeff Brown's Motion to Supplement the Record on Appeal and Appendix filed on April 15, 2024.

[2] On the advice of the case manager this document will be entered into an Appendix to be filed subsequently should the court grant Jeff Brown's Motion to Supplement the Record on Appeal and Appendix filed on April 15, 2024.

- The Bankruptcy Court on December 17, 2018 issued an Order granting NuVasive's proof of claim to the extent of $1,200,000 and Thermal Surgical's proof of claim to the extent of $315,000; while declaring the Adversary Proceeding moot.[3]

- Prior to closing the Brown bankruptcy case the Bankruptcy Court distributed $48,077.97 to NuVasive and $12,620.47 to Thermal Surgical.

On May 14, 2019 the NuVasive Case was filed claiming NuVasive was a third-party beneficiary of Mr. Brown's employment agreement with Thermal Surgical. That suit was subsequently consolidated with the Thermal Surgical Case. On December 19, 2019 NuVasive and Thermal Surgical filed motions for summary judgment on the basis that the Bankruptcy Court's approval of their proofs of claim had the effect of res judicata. On June 30, 2020 the District Court denied both summary judgment motions (hereafter, the "June 30, 2020 Order"). App. at A-89.

However, after both Thermal Surgical and NuVasive filed a Motion for Partial Reconsideration of the Court's June 30, 2020 Order (hereafter, the "Motion for Reconsideration"), App. at A-107 the District Court reversed itself in its

---

[3] On the advice of the case manager this document will be entered into an Appendix to be filed subsequently should the court grant Jeff Brown's Motion to Supplement the Record on Appeal and Appendix filed on April 15, 2024.

Opinion and Order dated February 8, 2021 (hereafter, its "February 8, 2021 Order") by granting Thermal Surgical's motion for summary judgment, but again denying NuVasive's summary judgment motion. App. at A-115. The District Court's reasons for its reversal will be discussed subsequently herein. Afterwards, Thermal Surgical filed a motion pursuant to FRCP 58(d) to request entry of final judgment in a separate document. The District Court denied this motion.

Thereafter, Mr. Brown retained new counsel in the NuVasive Case and he and NuVasive engaged in discovery and mediation. At the mediation session held on November 27, 2023 settlement was achieved. Pursuant thereto NuVasive agreed to dismiss its litigation without receiving any compensatory consideration and Thermal Surgical's claim against Brown was deemed a final judgment in the amount of $302,379.53. A copy of the Court's Order and Joint Motion For An Order of Final Judgment And To Dismiss Without Prejudice is contained in the Appendix at App. A-143. This appeal ensued.

## SUMMARY OF ARGUMENT

The District Court erred when it granted Thermal Surgical's Motion for Reconsideration of its previous denial of Thermal Surgical's Motion for Summary Judgment. It also erred when, on second thought, the District Court granted Thermal Surgical's Motion for Summary Judgment on the grounds that

6

the Bankruptcy Court's approval of Thermal Surgical's proof of claim constituted a final judgment to which res judicata applied.

## ARGUMENT

The District Court's decisions regarding the Motion for Reconsideration and the applicability of the doctrine of res judicata to Thermal Surgical's proof of claim are questions of law. The appellate court's standard of review, therefore, is de novo, a non-deferential standard in which the appellate issues are examined from the beginning without deferring to the District Court's decision.

**ISSUE 1**

**The District Court erred when it granted Thermal Surgical's Motion for Reconsideration of its previous denial of Thermal Surgical's Motion for Summary Judgment.**

The District Court's June 30, 2020 Order, App. at A-89 properly denied both Plaintiffs' motions for summary judgment. Therein the District Court noted that offensive application of res judicata, as opposed to defensive, is rare, especially in this case where the Plaintiffs sought to convert the bankruptcy court's decisions on proofs of claim filed by the Plaintiffs into enforceable monetary judgments. Citing Defendant's lack of incentive to fully litigate the proofs of claim, the District Court deemed it unfair to grant Plaintiffs' motions.

Subsequently, Thermal Surgical and NuVasive filed their Motion for

Reconsideration. App. at A-107. In its February 8, 2021 Order, App. at A-115, the District Court denied NuVasive's Motion for Reconsideration but granted Thermal Surgical's, even though the District Court admitted at page 2 that reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources". It also said at page 2:

> "The Second Circuit has held that reconsideration may be justified when there is: (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice. See Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)."

Nonetheless, the District Court cited no facts supporting any of these three principles in its February 8, 2021 Order, App. at A-115. Instead, it leap frogged this threshold for reconsideration addressing only the res judicata issue.

The Motion for Reconsideration in paragraph 1 thereof also acknowledged "that the standard for granting a motion to reconsider is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v, CSX Transp., Inc., 70F.3d 255, 257 (2d Circ. 1995).

Thermal Surgical's Motion for Reconsideration claimed "overlooked

data" by referencing its Adversary Complaint including a motion for summary judgment filed in that proceeding on April 25, 2018. Yet that proceeding was not overlooked. It was briefed by Thermal Surgical and specifically discussed by the District Court at page 4 of the June 30, 2020 Order. App. at A-89. Nor did that Adversary Complaint even mention therein Thermal Surgical's damages claim, dealing solely with allegations that Mr. Brown misled the Bankruptcy Court in hiding asset transfers to his ex-wife.

The Motion for Reconsideration at paragraph 3 also claims "that Brown had every incentive to litigate NuVasive's Parties' proofs of claim". Yet the hearing on said proof of claim was <u>after</u> Mr. Brown's motion to waive the discharges of those claims had been granted by the Court. Thus, he had no incentive to object to the proofs of claim, knowing he could dispute said claims once the NuVasive Case and Thermal Surgical Case resumed.

At page 13 of the June 30, 2020 Order the Court said:

> "Here, Mr. Brown's objections to summary judgment are essentially that he was not represented well in the bankruptcy proceeding, that the proofs of claim are unproven, and that imposing a significate monetary judgment against him without further proof would be unfair. The Court agrees, and the motion for summary judgment on the movants' affirmative claims is denied".

The District Court was right the first time. Mr. Brown should have been able to assert against Thermal Surgical the defenses that were so successful

9

subsequently in the NuVasive Case, namely that the defection of Drs. Salerni and Lieberman was caused by the Plaintiffs. Mr. Brown contends that the Court's grant of the Motion for Reconsideration was reversible error.

## ISSUE 2

**The District Court erred when it granted Thermal Surgical's Motion for Summary Judgment on the grounds that the Bankruptcy Court's approval of Thermal Surgical's proof of claim constituted a final judgment to which res judicata applied.**

As cited in the June 30, 2020 Order the District Court at page 9 said that the doctrine of "res judicata bars a subsequent litigation when (1) the prior decision was a final judgment on the merits, (underline added) (2) the litigants were the same parties [or in privity], (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." _Corbett v MacDonald Moving Servs._, 124 F. 3d 82, 88 (2d Cir. 1997). In this case NuVasive and Thermal Surgical asked the District Court to apply the doctrine regarding the proofs of claim allowed by the Bankruptcy Court. Such an application would authorize the use of res judicata offensively.

Again, citing from the June 30, 2020 Order the District Court said at pages 10-12:

10

"In asking this Court to enter judgment on their affirmative claims, the NuVasive parties are asserting *res judicata* as an offensive, rather than a defensive, tool. Offensive application of *res judicata* is rare, as it is "typically a defensive doctrine." St. Paul Mercury Ins. Co. v Williamson, 224 F. 3d 425, 439 (5th Cir 2000). "The Supreme Court has cautioned that the offensive use of res judicata should be examined carefully to determine whether it would be unfair to the defendant." Sharp Kabushiki Kaisha v. ThinkSharp, Inc., 448 F. 3d 1368, 1371 (Fed, Circ, 2006) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-32 (1979)). In *Parklane*, the Supreme Court provided a non-exhaustive list of fairness considerations, including whether the party in the first action had sufficient incentive to defend himself vigorously. 439 U.S. at 330.

If the Court were to grant the NuVasive parties' motion for summary judgment on their affirmative claims, its ruling would transform the bankruptcy court's decision into an enforceable monetary judgment. At least one Circuit Court has noted, however, that "[a]n allowed claim in bankruptcy serves a different objective from that of a money judgment – it permits the claimant to participate in the distribution of the bankruptcy estate." Ziino v. Baker, 613 F. 3d 1326, 1328 (11th Cir. 2010) (citations omitted). Similarly, "the assertion of a claim in bankruptcy is, of course, not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the proceeding." *Id*. (quoting Matter of Mobile Steel Co., 563 F. 2d 692, 700 (5th Cir. 1977)). Depending upon the size of the bankruptcy estate, a distributive share could be far smaller than payment on the entire proof of claim. Correspondingly, and with respect to the fairness considerations encouraged by *Parklane*, the incentive to engage in vigorous litigation would be smaller as well.

Here, the distributions from the bankruptcy estate to NuVasive and Thermal Surgical were far smaller than their proofs of claim, which suggests that the incentive to object was also reduced [4]. Mr. Brown now submits that those claims are considerably exaggerated and not based on fact. He also cites the payment already made by his employer [5]. There is no dispute that the proofs of claim were allowed with only a minor objection by the Chapter 7 trustee, and have not been established in any

---

[4] NuVasive's claim was $1,200,000 and it was paid $48,077.97.
 Thermal Surgical's claim was $315,000 and it was paid $12,620.47.
[5] A2 Medical paid $250,000 to the NuVasive parties after being threatened with litigation.

11

sort of contested factual presentation. Without proving their claims, the NuVasive parties ask the Court to fully endorse the bankruptcy court's limited ruling and thereby achieve what could amount to a windfall. The Court declines to issue such an endorsement. See *Chemetron Corp. v. Bus. Funds, Inc.,* 682 F, 2d 1149, 1191 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 *and cert. denied*, 460 U.S. 1013 (1983) ('[T]he finality requirement does not necessarily demand the ministerial act of executing a judgment. It does not elevate form over substance in that fashion – the accurate definition of "finality" in the offensive collateral estoppel contest is "fully litigated")".

The District Court concluded its decision at pages 12-13 saying:

"When the Second Circuit precedent supports treatment of an allowed proof of claim as *res judicata,* the NuVasive parties have offered no case law sanctioning *offensive* use of a bankruptcy court ruling. The Supreme Court has determined that "the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Parklane Hosiery Co.,* 439 U.S. at 331. Here, Mr. Brown's objections to summary judgment are essentially that he was not represented well in the bankruptcy proceeding, that the proofs of claim are unproven, and that imposing a significant monetary judgment against him without further proof would be unfair. The Court agrees, and the motion for summary judgment on the movants' affirmative claims is denied".

As it turned out Mr. Brown's claims and the Court's reasoning were quite prescient. Mr. Brown, after agreeing to the Bankruptcy Court's waiver of discharge of the claims of the NuVasive parties, had no incentive to challenge the merits of the proofs of claim at the claims hearing. He had already decided voluntarily to dispute the claims in the NuVasive Case and the Thermal Surgical Case. This alone distinguishes this case from cases in which proofs of claim were found to be final judgments.

12

And he did so quite successfully in the NuVasive Case where NuVasive, despite its unproven bankruptcy claim of $1,200,000 agreed to dismiss its case without being paid anything. Yet in granting Thermal Surgical's motion for summary judgment the District Court denied him the opportunity to achieve the same result with Thermal Surgical's claim, which was subject to the same defense, namely that the NuVasive parties, not Jeff Brown, caused the defection of Drs. Salerni and Lieberman. That was unfair to Mr. Brown.

## CONCLUSION

WHEREFORE, Mr. Brown respectfully requests that this Honorable Court reverse the District Court's granting of the Motion for Reconsideration and the granting of Plaintiff's Motion for Summary Judgment and remand the Thermal Surgical Case to the District Court for further consideration.

Dated: April 24, 2024

/s/ Frank P. Urso
Frank P. Urso
18 South Main Street
Rutland, VT  057001
Tel: (802) 775-2361
Fax: (802) 775-0739
reisurso@yahoo.com
Counsel for Jeff Brown

13

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

I hereby certify in accordance with Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 32(g)(l) that the attached brief is proportionally spaced, has a typeface (Time New Roman) of 14 points and contains 2,944 words (excluding, as permitted by Fed. R. App. P. 32(f), the cover page, table of contents, table of authorities, certificate of compliance, signature block and certificate of service), as counted by the Microsoft Word processing system used to produce this brief.

Dated:       April 24, 2024

/s/ Frank P. Urso
Frank P. Urso
18 South Main Street
Rutland, VT  05701
Tel: (802) 775-2361
Fax:(802) 775-0739
reisurso@yahoo.com
Counsel for Defendant